IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LEONARD CRESCENZO, on behalf of himself and all others similarly situated, | § § § § § | |
| | § | Civil Action No. |
| | § | 2:15-cv-02851-ALM-NMK |
| Plaintiff, | § § | |
| | § | District Judge Algenon L. Marbley |
| | § | Magistrate Judge Norah McCann King |
| v. | § | |
| | § | |
| O-TEX PUMPING, LLC | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT O-TEX PUMPING, LLC'S RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION,
EXPEDITED OPT-IN DISCOVERY, AND COURT SUPERVISED
NOTICE TO POTENTIAL OPT-IN PLAINTIFFS**

Defendant O-Tex Pumping, LLC ("O-Tex") files this Response in Opposition to Plaintiff Leonard Crescenzo's ("Crescenzo" or "Plaintiff") Motion for Conditional Certification, Expedited Opt-In Discovery, and Court-Supervised Notice to Potential Opt-In Plaintiffs ("Motion for Conditional Certification"). In support of this Response, Defendant states as follows:

## I.   INTRODUCTION

This Court should deny Plaintiff's Motion for Conditional Certification because to determine whether Plaintiff and his proposed class are exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA") pursuant to the Motor Carrier Act ("MCA") would require this Court to conduct a highly individualized analysis into each class member's job duties and functions. Thus, this action is inappropriate for resolution as a class.

If any class is certified, Plaintiff's proposed class is overly broad. Plaintiff's purported evidence relates solely to Equipment Operator 1 (Driver) employees (and one pump hand supervisor and one bulk plant supervisor who does not qualify even under Plaintiff's overreaching proposed class). Further, Plaintiff has not put forth sufficient evidence to justify a nationwide class. Therefore, at best, the evidence submitted by Plaintiff in support of conditional certification supports notice only to those that are or were classified as Equipment Operator 1 (Driver) employees in O-Tex's Ohio and Pennsylvania district offices, and only for those employees who worked for O-Tex in the three years prior to the issuance of the notice.

Moreover, the information requested by Plaintiff and the method of notice is invasive and improper. To facilitate notice, Plaintiff should only be furnished the potential class members' names, last known addresses, and dates of employment. The proposed notice should be in conformance with Sixth Circuit precedent.

## II. PROCEDURAL HISTORY

Plaintiff filed this lawsuit on September 22, 2015, alleging claims under the FLSA, Ohio Minimum Fair Wage Standards Act, and the Pennsylvania Minimum Wage Act.[1] Plaintiff seeks to represent himself and "all current and former hourly paid workers that received job bonuses or similar payments throughout the United States during the three-year period prior to the filing of this Complaint up to the date the court authorizes the notice."[2] On November 10, 2015, Plaintiff filed the instant Motion for Conditional Certification, seeking conditional certification of the proposed class pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).[3] O-Tex opposes Plaintiff's motion to certify an inappropriate and overly broad class.

---

[1] Document 1 at ¶¶ 29, 49, 54.
[2] Document 1 at ¶ 43.
[3] Document 31 at 3. The Motion for Conditional Certification is based solely on the FLSA. Plaintiff has not yet moved for class certification on the state wage claims pursuant to Federal Rule of Civil Procedure 23.

2

## III. ARGUMENT AND AUTHORITIES

### A. Conditional Class Certification Standard

Section 16(b) of the FLSA permits plaintiffs to bring a collective action against an employer on behalf of themselves and other similarly situated employees. 29 U.S.C. § 216(b). District courts "have discretion, *in appropriate cases*, to implement" the collective action mechanism under Section 16(b) "by facilitating notice to potential plaintiffs." *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169, 110 S. Ct. 482, 107 L.Ed. 2d 480 (1989) (emphasis added). Within the Sixth Circuit, courts apply a two-step process for determining whether an FLSA claim should proceed as a collective action. *See In re HCR ManorCare, Inc.*, No. 11-3866, 2011 WL 7461073, at *1 (6th Cir. Sept. 28, 2011) (finding no abuse of discretion where district court used "generally applied" two-step process).

At the first stage, when the plaintiff requests conditional certification, the plaintiff must make a "modest factual showing" that he is "similarly situated" to the other employees whom he seeks to include in the class. *Comer v. WalMart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006) (internal citations omitted). In other words, Crescenzo must submit evidence establishing at least a colorable basis for his claim that a class of "similarly situated" individuals exists. *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 868 (S.D. Ohio 2005) (citing *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991)). Despite the "modest" showing required, the court still must carefully guard against abuse and the "stirring up of litigation through unwarranted solicitation." *Lacy v. Reddy Elec. Co.*, No. 3:11-cv-52, 2011 WL 6149842, at *2 (S.D. Ohio Dec. 9, 2011) (citing *Severtson*, 137 F.R.D. at 266-67) (additional quotation marks omitted). If conditional certification is granted, the parties engage in discovery, and the defendant may then move to decertify the class. At this second stage, the court will "examine

3

more closely the questions of whether particular members of the class are, in fact, similarly situated." *Comer*, 454 F.3d at 547.

But as this Court has required, even the first step's "modest" showing does not mean that the court will simply "rubber-stamp" a proposed class. *Lutz v. Huntington Bancshares, Inc.*, No. 2:12-cv-01091, 2013 WL 1703361, at *2 (S.D. Ohio Apr. 19, 2013) (declining to certify the overbroad class proposed by plaintiff and instead narrowing the class based on the evidence provided). Conditional certification is by no means automatic. *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925, 29-30 (D. Ariz. 2010). In adopting this modest factual showing standard, this Court has held that actual, factual evidence must be submitted to demonstrate that the proposed plaintiffs are similarly situated. *Harrison*, 411 F. Supp. 2d at 868 ("conditional certification should not be granted unless the plaintiff presents some evidence to support [his] allegations that others are similarly situated"). As discussed more fully in the accompanying Motion to Strike, Plaintiff's and the opt-ins plaintiffs' declarations contain unsupported legal conclusions that must be stricken.

B.  **Significant Differences Within and Among the Proposed Class Render a Collective Action in This Case Unmanageable and Inappropriate.**

Plaintiff has proposed a nationwide class of all current and former O-Tex employees that received job bonuses. Yet, Plaintiff was classified as an Equipment Operator 1 (Driver) and drove cement pump trucks, pump down truck units, and/or cement bulk units. (Affidavit of Jacki McDaniel ("McDaniel Affidavit") at ¶¶ 4-5, attached hereto as Exhibit 1). As such, Plaintiff's (and the opt-in plaintiffs') job duties make it likely that they are exempt from the FLSA's overtime requirements pursuant to the Motor Carrier Act ("MCA"). To determine whether Plaintiff's proposed class is exempt, this Court would be required to conduct an individualized

4

inquiry into each class member's job duties and responsibilities. Thus, this action is inappropriate for class resolution.

1. ***The Motor Carrier Act exemption to the Fair Labor Standards Act.***

The FLSA sets the baseline standard that "[e]mployees engaged in interstate commerce" are owed "one and one-half times" their regular rate for work performed in excess of 40 hours per work week. 29 U.S.C. § 207(a)(1). The MCA is an exemption to this rule, and to avoid conflict between the MCA and the FLSA, the FLSA excludes from coverage of its overtime provisions all employees "to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service…." 29 U.S.C. § 213(b)(1). The MCA provides that the Secretary of Transportation may "prescribe requirements for…[the] maximum hours of service of employees of…motor carrier[s] and…motor private carrier[s]." 49 U.S.C. § 31502(b)(1), (2). An employer is considered a motor carrier if it provides transportation for compensation. 49 C.F.R. § 13102(14). An employer is a motor private carrier if it transports property across state lines. 49 C.F.R. § 13102(15); 49 C.F.R. § 13501; *see Morris v. McComb*, 332 U.S. 422, 432-34, 68 S. Ct. 131, 92 L. Ed. 44 (1947) (MCA exemption applies even when only 4% of a carrier's business is interstate).

Employees are exempt under the MCA if they are: (1) employed by employers who are classified as motor carriers or motor private carriers (as defined above); (2) employed as a driver, driver's helper, loader, or mechanic; and (3) engaged in work that directly affects the safety of motor vehicles in the transportation on highways in interstate commerce. 29 C.F.R. § 782.2 (citing *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 67 S. Ct. 954, 91 L. Ed. 1184 (1947)); *Wade v. Werner Trucking Co.*, No. 2:10-cv-270, 2014 WL 1091707, at *24 (S.D. Ohio Mar. 18, 2014). To qualify as a driver, an individual must drive a motor vehicle in transportation

5

in interstate commerce. 29 C.F.R. § 782.3(a). An employee will be found to be engaged in work affecting the safety of motor vehicles if the employee is "likely" to be "called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities." 29 C.F.R. § 782.2(b)(3). If applicable, the exemption will apply "in all workweeks when he is employed at such job…regardless of the proportion of the employee's time or of his activities which is actually devoted to such safety-affecting work in the particular workweek." 29 C.F.R. § 782.2(b)(3). The employee's exempt status, therefore, becomes an individualized inquiry into the employee's job duties.

***2. The Technical Corrections Act exception to the Motor Carrier Act.***

On June 6, 2008, Congress passed the Safe, Accountable, Flexible, Efficient, Transportation Equity Act: A Legacy for Users ("SAFETEA-LU") Technical Corrections Act of 2008, Pub. L. 110-244, 122 Stat. 1572 (2008) ("TCA"). The TCA amended the 2005 SAFETEA-LU, and included an exception that extended FLSA overtime protection to certain "covered" employees, notwithstanding the MCA exemption. Pub. L. 110-244, § 306(a). A "covered" employee is defined, in relevant part, as an individual employed by a motor carrier or motor private carrier, whose work as a driver affects "the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce." *Id.* § 306(c). Thus, an analysis of whether an employee is exempt under the FLSA pursuant to the MCA, requires a determination of whether the employee performs his or her duties on vehicles of  at least 10,001 pounds or more in transportation on public highways in interstate or foreign commerce. *Id.* Determining whether an employee is then subject to the TCA exception requires an individual inquiry into the types of trucks driven, when they were driven, and whether they were driven across state lines. *See Mayan v. Rydbom Exp., Inc.*, No. 07-2658,

2009 WL 3152136, at *9 (E.D. Pa. Sept. 30, 2009) ("It must be determined when and how long each plaintiff performed duties qualifying him or her to be a 'covered employee.' This is a fact-specific analysis of each person's activities…").

> 3. *The Court must conduct an individualized inquiry to determine whether Crescenzo and the opt-in plaintiffs are exempt under the Motor Carrier Act.*

As an initial matter, Crescenzo and all of the opt-in plaintiffs[4] (excluding James Gordon and Martin Gubesch) were classified as an Equipment Operator 1 (Driver) (McDaniel Affidavit at ¶ 4), and likely met the requirements under the MCA. The job duties and responsibilities for Equipment Operator 1 (Driver) employees for O-Tex include driving cement pump trucks, pump down truck units, and cement bulk units to the well site and operating the units at the well site. (McDaniel Affidavit at ¶ 5). Crescenzo stated in his declaration that he was employed as a "CDL A driver."[5] In addition to Crescenzo, ten other opt-in plaintiffs stated in their declarations that they were employed as drivers, some listing their CDL A license status.[6] Thus, Crescenzo and approximately half of the opt-in plaintiffs have stated that they were employed in one of the positions that may be exempt from FLSA overtime requirements. *See Pyramid*, 330 U.S. at 706-08. However, regardless of any other job titles Crescenzo and the opt-in plaintiffs have alleged they held, the MCA exemption turns on whether the employees engaged in the duties of a driver, which they likely did. *See Wade*, 2014 WL 1091707, at *25; McDaniel Affidavit at ¶¶ 4-5.

As further support of plaintiffs' exempt status, O-Tex requires all of its Equipment Operator 1 (Driver) employees to have and maintain a Class A CDL license. (McDaniel Affidavit at ¶ 5). A Class A CDL license is required to drive vehicles with a gross vehicle weight

---

[4] Plaintiff submitted 23 consent forms for opt-in plaintiffs, but only submitted 22 declarations. Steven Andrews submitted a consent form but did not submit a declaration. However, Mr. Andrew's declaration would not change this analysis as he was also classified as an Equipment Operator 1 (Driver). (McDaniel Affidavit at ¶ 4).
[5] Document 31 at 10; Document 31-2 at 1.
[6] Document 31-3 at 2 ("cement bulk driver"), 5 ("driver"), 12 ("bulk CDL A driver"), 13 ("truck driver"), 14 ("bulk truck driver"), 16 ("truck driver"), 17 ("truck driver"), 18 ("truck driver"), 19 ("bulk truck operator"), 22 ("driver" and "CDL trainer").

7

rating ("GVWR") of 26,001 or more pounds – easily exceeding the 10,001 pound requirement necessary for the MCA exemption to apply. 49 C.F.R. § 383.5. Crescenzo, as well as all but two of the opt-in plaintiffs, were required to maintain licensing to drive vehicles that exceeded 26,001 pounds. (McDaniel Affidavit at ¶¶ 4-5). As a result, Plaintiff and his proposed class certainly would have driven vehicles that meet or exceed the requirement contained in the MCA. However, any inquiry into whether plaintiffs drove vehicles of 10,001 pounds or more across state lines would implicate consideration of the applicability of the TCA exception, and the Court would need to determine whether plaintiffs drove vehicles weighing 10,000 pounds or less. *See* Pub. L. 110-244, § 306(a), (c).

While courts have held that merit-based questions are best resolved at the second phase of certification (*e.g. Hughes v. Gulf Interstate Field Servs., Inc.*, No. 2:14-cv-000432, 2015 WL 4112312, at *4 (S.D. Ohio July 7, 2015)), where "liability depended on an individual determination of each employee's duties," courts have "declined to find potential class members similarly situated." *Reich v. Homier Distrib. Co., Inc*., 362 F. Supp. 2d 1009, 1013-14 (N.D. Ind. 2005) (compiling similar cases). In *Reich*, plaintiff was a "sales partner" responsible for, in relevant part, loading and unloading merchandise on company trailers for trade shows. *Id.* at 1011. Plaintiff asserted that all 1,171 sales partners worked 40 hours per week but were not paid overtime wages. *Id.* at 1012. The employer argued that the sales partners were "loaders" as defined under the MCA, and thus, exempt from FLSA. *Id.* at 1013. The court found that determining whether the employees were loaders under the MCA exemption would require "a highly individualized, fact-specific inquiry." *Id.* at 1013. Therefore, the court denied conditional certification because "it will be impossible to come up with a class-wide determination on liability." *Id.* at 1013, 15.

8

This matter presents a situation similar situation to *Reich.* Here, Crescenzo has proposed a class that contains all employees who were paid an hourly wage and job bonuses, and alleged that overtime was not paid properly. (Complaint at ¶ 43). O-Tex has asserted that the plaintiffs are subject to the MCA (Answer at ¶ 79), and has provided evidence that the plaintiffs were responsible for driving trucks and equipment that required the plaintiffs to maintain Class A CDL licensing, which is required for vehicles over 26,001 pounds. (McDaniel Affidavit ¶ 4-5). As discussed above, a determination of whether the plaintiffs are properly "drivers" under the MCA and exempt from FLSA coverage would require an individualized inquiry as to each plaintiff's job duties. (Section B.1 *infra*). Additionally, to determine whether plaintiffs would be "covered" employees under the TCA exception to the MCA and *subject* to the FLSA, would require "a fact-specific analysis of each person's activities." *Mayan*, 2009 WL 3152136, at *9. As such "it [would] be impossible to come up with a class-wide determination on liability." *Reich*, 362 F. Supp. 2d at 1013.

Further, it is appropriate for this Court to conduct such an inquiry because if Crescenzo is exempt under the MCA, he is an inappropriate class representative. While Rule 23 requirements generally don't apply to certification of an FLSA collective action, courts have recognized that "inadequacy of representation is nevertheless an equitable consideration at issue in determining whether to certify a putative class." *In re FedEx Ground Package Sys., Inc.*, 662 F. Supp. 2d 1069, 1081-82 (N.D. Ind. 2009) (refusing to certify a class because, among other things, the MCA exemption applied to named plaintiffs, rendering them inadequate class representatives). As a result, this Court may determine whether the named Plaintiff in this matter is eligible to serve as a class representative.

A collective action should only proceed where it will preserve judicial economy by facilitating the efficient resolution of multiple claims in one proceeding. Thus, common issues of law and fact are necessary, because without them, Section 216(b) would not further the interests of judicial economy. *Horne v. United Servs. Auto. Ass'n*, 279 F. Supp. 2d 1231, 1234 (M.D. Ala. 2003). Here, because of the highly individualized inquiry necessary to determine whether the plaintiffs are similarly situated, certifying such an action "would destroy the economy of scale envisioned by the FLSA collective action procedure." *Reich*, 362 F. Supp. 2d at 1015 (quoting *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1274-75 (M.D. Ala 2004)) (internal quotations omitted). As a result, Plaintiff's Motion for Conditional Certification should be denied.

### C. If the Court Grants Conditional Certification, the Class Should Be Limited in Geographic Scope, Job Title, and Time.

If this Court determines that Plaintiff has met his burden in establishing that he is similarly situated to other employees, this Court should refuse to conditionally certify and send notice to the overly broad class proposed by Plaintiff. As an initial matter, this Court has emphasized that Plaintiff must put forth a "manageable class." *Rutledge v. Claypool Elec., Inc.*, No. 2:12-cv-159, 2012 WL 6593936, *13 (S.D. Ohio Dec. 17, 2012) (denying conditional certification of one proposed class that included all current and former employees who received paid time off instead of compensation because, in part, the definition "suggests no boundaries and is unlimited in time and job title and includes current and former employees"). Here, Plaintiff's proposed class consists of all current and former hourly paid workers that received job bonuses throughout the United States in the three-years prior to the filing of the Complaint. Plaintiff's proposed class is unmanageable and overbroad.

### 1. *There is insufficient evidence to support a nationwide class.*

Despite Plaintiff's proposed class definition, there is insufficient admissible evidence to support a nationwide class of all hourly employees who received bonuses. Equipment Operator 1 (Driver) employees received their assignments from the district offices at which they were stationed. (McDaniel Affidavit at ¶ 7). Crescenzo has based his declaration on his observations that employees were paid the same way he was paid.[7] In other words, Crescenzo has based his knowledge on what he personally "observed" at the locations where he worked – Pennsylvania and Ohio.[8] Crescenzo also has offered declarations from opt-in plaintiffs, who primarily have declared that they worked from the Malvern, Ohio and Fenelton, Pennsylvania district offices.[9] O-Tex's records also reflect that Crescenzo and almost all of the opt-in plaintiffs were stationed at the Malvern, Ohio and Fenelton, Pennsylvania district offices. (McDaniel Affidavit at ¶ 8). Identical to Crescenzo's declaration, all of the opt-in plaintiffs' declarations state that they "observed" the way in which O-Tex paid its employees.[10] Crescenzo and the opt-in plaintiffs offer no evidence that they know how employees at locations other than where they worked were paid, nor do they describe how they observed how other employees were paid, or even what they observed. Thus, Crescenzo and the opt-in plaintiffs can do no more than put forth unsubstantiated statements regarding employees at the same locations as where they worked. *See O'Neal v. Emery Fed. Credit Union*, No. 1:13-cv-22, 2013 WL 4013167 (S.D. Ohio Aug. 6, 2013) (finding factually unsubstantiated statements filed with a motion for conditional certification to be entitled to little or no weight).

---

[7] Document 13 at 10; Document 13-2 at 1.
[8] Document 31-2 at 1.
[9] *See generally* Document 31-3. Although Steve Andrews did not submit a declaration, he was located at the Malvern, Ohio district office. (McDaniel Affidavit at ¶ 8).
[10] *See generally*, Document 13-3.

HOU:0025672/00002:1821617v4

A nationwide class cannot be certified based on the limited evidence Crescenzo has put forth. Crescenzo and the majority of the opt-in plaintiffs worked out of O-Tex's Pennsylvania or Ohio district offices. While there are a few opt-ins who allege they also worked in other locations, Plaintiff has not provided evidence of a *nationwide* policy or practice that violates the FLSA. Thus, a nationwide class is inappropriate and should be limited to those locations where Plaintiff has put forth sufficient evidence of similarly situated employees – namely O-Tex's Pennsylvania and Ohio district offices. *See Veerkamp v. U.S. Sec. Assocs., Inc.*, No. 1:04-cv-0049DFH-TAB, 2005 WL 775931, at *1-2 (S.D. Ind. Mar. 15, 2005) (denying nationwide certification and limiting the class to Indiana employees where *most* of the affidavits plaintiffs submitted came from Indiana employees); *Clark v. Dollar General Corp.*, No. 3:00-cv-0729, 2001 WL 878887, at *5 (M.D. Tenn. May 23, 2001) (denying nationwide conditional certification of all employees and limiting to employees from particular Tennessee and Alabama stores where plaintiffs' only evidence came from Tennessee and Alabama employees).

### 2. *There is insufficient evidence of any similarly situated employees outside of Equipment Operator 1 (Driver) employees.*

Plaintiff makes the unsupported assertion that he is similarly situated to a nationwide class of all hourly paid employees who received job bonuses or similar payments. While the opt-in plaintiffs self-report their job titles as drivers, laborers, and pump operators, all but two of the opt-in plaintiffs are or were classified as Equipment Operator 1 (Driver) employees for O-Tex. (McDaniel Affidavit at ¶ 4). In short, the only evidence Plaintiff has put forth are formulaic declarations from twenty-one other employees that are or were classified as Equipment Operator 1 (Driver) employees.

Plaintiff also has offered as evidence the declaration of Martin Gubesch, a Bulk Plant Supervisor. (McDaniel Affidavit at ¶ 6). While Gubesch is an hourly employee, he did not

12

receive any "job bonuses" of the same type as Crescenzo has alleged. (McDaniel Affidavit at ¶ 6). As a bulk plant supervisor, Gubesch never worked at a well site and was not eligible for job bonuses. (McDaniel Affidavit at ¶ 6). Thus, Gubesch is not similarly situated to Plaintiff because he was not paid "job bonuses"[11] and is properly excludable from this class. *See O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009) ("plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs"); *Diaz v. Elecs. Boutique of Am.*, No. 04-cv-0840E(SR), 2005 WL 2654270, at *3 (W.D.N.Y. Oct. 17, 2005) (requiring a "factual nexus" between plaintiffs). As a result, the proper class of similarly situated employees should be limited to Equipment Operator 1 (Driver) employees.

### 3. *The class should be limited to those workers employed in the three years before the notice is approved, if any.*

The statute of limitations under the FLSA dictates the required time period for the purported class. 29 U.S.C. § 255(a). A cause of action under the FLSA "may be commenced within two years after the cause of action accrued…except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). The limitations period is not tolled with respect to other potential plaintiffs unless and until they opt in to the case. 29 U.S.C. §256(b). Based on the statute of limitations, courts in the Sixth Circuit have recognized that class certification is appropriately limited to workers employed by the defendant up to three years before the notice is approved by the court, not three years prior to the filing of the lawsuit. *Atkinson v. TeleTech Holdings, Inc*., No. 3:14-cv-253, 2015 WL 853234, at *3 (S.D. Ohio Feb. 26, 2015) (agreeing with defendant that limiting the opt-in period to three years from the date of the notice and not the date of filing was proper).

---

[11] *See* Document 1 at ¶¶ 23-25; Document 31 at 9.

Thus, Plaintiff's class should be limited to those employees that worked at O-Tex in the three years prior to the issuance of the notice (if any).

**D.    If this Court Grants Conditional Certification, Plaintiff's Notice to Potential Opt-In Plaintiffs Should Be Limited.**

Plaintiff has proposed in the Order attached to the Motion for Conditional Certification that the parties should submit to the Court proposed language for any notification and consent forms.[12] In the event that the Court grants conditional certification, O-Tex respectfully requests that the Court provide the following guidelines to the notification and consent forms.

   *1.    Plaintiff's notice should not require O-Tex to provide telephone numbers.*

Plaintiff's request for telephone numbers is inappropriate and overly broad. O-Tex should not be required to provide telephone numbers for the potential plaintiffs, because Crescenzo has not shown that disclosure of telephone numbers of appropriate class members is appropriate at this time. *See Lutz*, 2013 WL 1703361, at *6 ("Courts generally approve only a single method for notification unless there is a reason to believe that method is ineffective."). Unless and until Plaintiff makes some showing that using the last known address does not enable him to provide reasonable notice to the class, disclosure of the telephone numbers is unnecessary. *Id*. at *7; *see also Swigart v. Fifth Third Bank*, 276 F.R.D. 201, 215 (S.D. Ohio 2011) (declining to order defendant to provide employees' phone numbers, social security numbers and employee identification numbers).

   *2.    The notice should not direct opt-ins to only contact Plaintiff's counsel.*

Any proposed notice should not direct potential class members to only contact Plaintiff's counsel. Potential opt-ins are free to use any counsel they desire, and should be informed of that right. *Heaps v. Safelite Sols., LLC,* No. 2:10-cv-729, 2011 WL 1325207, at *8-9 (S.D. Ohio Apr.

---

[12] Document 31-1.
14

HOU:0025672/00002:1821617v4

5, 2011) (citing *Douglas v. GE Energy Reuter Stokes*, No. 1:07-cv-077, 2007 WL 1341779 (N.D. Ohio Apr. 30, 2007)).

### 3. *O-Tex should be allowed to inform opt-ins that they may be required to pay costs and may be required to participate in discovery.*

To accurately inform the putative class of the full implications of joining in this lawsuit, O-Tex is entitled to language in the notice informing potential opt-ins that they may be liable for costs for a defendant's costs of litigation if the Court reaches a decision in favor of O-Tex. *Atkinson*, 2015 WL 853234, at *5-6. Additionally, Plaintiff's notice should allow O-Tex to inform opt-ins that they may be required to participate in discovery, such as give a deposition, respond to written discovery, and testify in court. *Baden-Winterwood v. Life Time Fitness*, No. 2:06-cv-99, 2006 WL 2225825, at *2 (S.D. Ohio Aug. 2, 2006) (approving defendant's request to include similar language in the notice); *Snide v. Disc. Drug Mart, Inc.*, No 1:11-cv-0244, 2011 WL 5434016, at *6-7 (N.D. Ohio Oct. 7, 2011) (requiring inclusion of potential plaintiffs' liability and requirement to participate in discovery). Further, the judicial notice should clarify that the lawsuit is only in the early stages, that the right to recovery is not established, and a decision to participate in the lawsuit does not guarantee that the participant will receive money. *Swigart*, 276 F.R.D. at 214 (requiring such language to avoid "any misunderstanding on part of putative collective action plaintiff").

### 4. *O-Tex should be allowed to explain its position.*

O-Tex also requests an opportunity to provide an explanation in the notice of its reasons for denying denying liability so that potential opt-in plaintiffs are fully informed about this lawsuit prior to deciding whether to join. *Snide*, 2011 WL 5434016, at *7 ("The purpose of the notice is to provide potential plaintiffs with a neutral discussion of the nature of the action.").

15

### 5. *The notice should not contain any reference to state law claims.*

Plaintiff's Motion for Conditional Certification is sought solely under the FLSA. While Plaintiff has pled claims under the Ohio Minimum Fair Wage Standards Act and the Pennsylvania Minimum Wage Act, those are claims pursuant to Federal Rule of Civil Procedure 23, which differs from the FLSA. Thus, the notice should not contain any reference to Ohio, Pennsylvania, or any other state wage claims. *Heaps*, 2011 WL 1325207, at *7.

### 6. *The opt-in notice should be limited to 45 days.*

O-Tex requests that the opt-in notice require any potential opt-ins to return the consent form within 45 days from issuance. Courts in the Sixth Circuit have recognized that 45 days is a sufficient amount of time to allow potential opt-in plaintiffs to receive and return the notice. *Heaps*, 2011 WL 1325207, at *9 ("A forty-five day opt-in period satisfies the need to prevent delay in this litigation while also allowing potential plaintiffs time to fully consider their options."); *Baden-Winterwood*, 2006 WL 2225825, at *3 (approving a 45 day notice period because "sixty (60) days is too long and would needlessly delay the litigation.").

## IV. Conclusion

For the foregoing reasons, Defendant O-Tex Pumping, LLC respectfully requests that the Court deny Plaintiff's Motion for Conditional Certification, Expedited Opt-In Discovery, and Court-Supervised Notice to Potential Opt-In Plaintiffs, or in the alternative, deny the Motion in part as overbroad in geographic scope, job title, and time. Defendant further requests that the Court require the above requested guidelines for the notification and consent forms.

16

Respectfully submitted,

 /s/ J. Michael Rose
Andrew C. Smith (BN 0008136), Trial Attorney
Adam J. Rocco (BN 0083807)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, Ohio 43215
Telephone:  614.464.5434
Fax:  614.719.4969
acsmith@vorys.com
ajrocco@vorys.com

J. MICHAEL ROSE (*admitted pro hac vice*)
Texas State Bar No. 24041819
mrose@lockelord.com
JEFFREY M. MCPHAUL (*admitted pro hac vice*)
Texas State Bar No. 24069018
jmcphaul@lockelord.com
KATHERINE G. CISNEROS (*admitted pro hac vice*)
Texas State Bar No. 24094591
katherine.cisneros@lockelord.com
LOCKE LORD LLP
600 Travis Street, Suite 2800
Houston, Texas 77002-3095
(713) 226-1200 (Telephone)
(713) 229-2626 (Facsimile)

***Attorneys For Defendant O-Tex Pumping, LLC***

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 8th day of December, 2015, a true and correct copy of the above and foregoing instrument was served upon counsel of record referenced below via the Court's ECF System.

    Anthony J. Lazzaro
    Chastity L. Christy
    The Lazzaro Law Firm, LLC
    920 Rockefeller Building
    614 W. Superior Avenue
    Cleveland, Ohio 44113
    Phone: 216-696-5000
    Facsimile: 216-696-7005
    anthony@lazzarolawfirm.com
    chastity@lazzarolawfirm.com

    Don J. Foty
    John Anthony Neuman
    Kennedy Hodges, L.L.P.
    711 W. Alabama Street
    Houston, Texas 77006
    Telephone: (713) 523-0001
    Facsimile: (713) 523-1116
    dfoty@kennedyhodges.com

                                            /s/ J. Michael Rose
                                            J. Michael Rose

HOU:0025672/00002:1821617v4